```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Carlie Boyer

   v.                                           Civil No. 15-cv-148-LM
                                                Opinion No. 2016 DNH 014

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Carlie Boyer moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

### I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of

>    the Commissioner of Social Security as to any fact, if
>    supported by substantial evidence, shall be conclusive
>    . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the

resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 13. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Boyer alleges that she became disabled on November 15, 2011. Two days before that, she had been "brought to the [St. Joseph Hospital] emergency room . . . after being found at the bottom of an embankment near the Nashua River [after] falling some 20 to 25 feet down." Administrative Transcript (hereinafter "Tr.") 420. As a result of her fall, Boyer

fractured one or more ribs and her left thumb, suffered compression fractures of the endplates of several lumbar vertebrae, and dislocated her left hip.  She was treated with physical therapy and medication, and appears to have left the hospital with a walker.

In December of 2011, Boyer began seeing Dr. Susanne Zimmermann as her primary care physician.  On January 5, 2012, Boyer telephoned Dr. Zimmermann's office asking for "a note about whether or not she can return to any type of work and when etc."  Tr. 668.  After that request was relayed to Dr. Zimmermann, she told her nurse that Boyer "should be able to return to work at this time."  Id.  Dr. Zimmermann's nurse, in turn, told Boyer, on January 6, that "Dr. Zimmermann states she may return to work without restrictions."  Tr. 667 (emphasis added).  However, in the "Plan" section of a progress note dated January 16, which resulted from a visit in which Boyer complained of knee pain, Dr. Zimmermann reported that she gave Boyer "a note stating that she cannot do any bending or lifting [of] more than 10 pounds and no prolonged standing for the next 4 months."  Tr. 666.

Before Boyer fell down the embankment, diagnostic imaging had shown minimal degenerative changes in her right hip joint and mild degenerative changes in her feet and lumbar spine.  In June of 2008, she saw a doctor for possible rheumatoid

4

arthritis, but the physician stated that "[h]er symptoms are more consistent with a non-inflammatory type of arthritis such as osteoarthritis." Tr. 357. After her fall, Boyer was diagnosed with "[s]ubtle degenerative changes involv[ing] the medial compartments of both knees," Tr. 630. In addition, Boyer has been diagnosed with: benign positional vertigo (possibly related to head trauma sustained during her fall), atypical chest pain, alcohol abuse/withdrawal, elevation in transaminases and dilation of the common bile duct, hepatitis C, and osteopenia of the left femoral neck.

Turning from Boyer's physical health to her mental health, she has been diagnosed with: anxiety, anxiety disorder NOS, anxiety disorder with obsessive thinking, alcohol dependence in remission, depressive disorder, major depression with panic disorder, remitting major depression, obsession-compulsion disorder (by history), persecutory type delusional disorder, and rule-out obsessive compulsive disorder.[1] For those conditions, Boyer has been treated with Zoloft, Trazadone, and counseling.

---

[1] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

The record includes three formal opinions on Boyer's physical abilities to perform work-related activities. Those opinions are summarized, briefly, below.

On September 27, 2012, approximately 10 months after Boyer's fall, Dr. Dewi Brown performed a consultative examination of Boyer.[2] Dr. Brown diagnosed Boyer with status-post posterior dislocation, left hip; status-post lumbar vertebral fractures; status-post multiple rib fractures; status-post fractured terminal phalanx, left thumb; status-post colectomy for diverticulitis; status-post alcoholism; probable degenerative arthritis, great toe; and labyrinthine dysfunction, possible vertigo. See Tr. 708. With regard to Boyer's ability to function, Dr. Brown had this to say:

> She could dress herself slowly. She cannot stand for very long or even sit for [a] very long period. Bending is very difficult as is lifting and carrying. Squatting, kneeling, and climbing are also a problem. . . .
>
> . . . If she were to get back to work at this point, it [w]ould have to be very light, that is 10 pounds of lifting occasionally or 5 pounds frequently. She would probably have to start at four hours a day.

---

[2] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request." 20 C.F.R. §§ 404.1519 & 416.919.

6

>  There are of course multiple restrictions on bending, squatting, kneeling, and climbing.

Id. at 708-09.

On October 2, 2012, state-agency consultant Dr. Hugh Fairley, who did not examine Boyer, completed an assessment of her physical residual functional capacity ("RFC"). Dr. Fairley's RFC assessment is reported on two forms titled "Disability Determination Explanation" or "DDE" for short.[3] In a box located directly above the heading "Residual Functional Capacity," it is indicated that Dr. Brown's opinion is given "Great Weight." Tr. 86, 98. That box also includes this notation: "Non treating source opinion with current exams given weight." Id. Given the layout of the DDE form, it is not entirely clear who, exactly, gave great weight to Dr. Brown's opinion, but the most reasonable interpretation is to attribute that assessment of Dr. Brown's opinion to Dr. Fairley.

Turning to the specifics of Dr. Fairley's opinion, he determined, among other things, that Boyer could: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; (3) sit (with normal breaks) for about six hours in an eight-hour workday; and (4) occasionally climb

---

[3] One DDE form is for Boyer's application for DIB; the other is for her application for SSI.

ramps/stairs, stoop, and kneel.  In addition, Dr. Fairley stated that Dr. Zimmermann had cleared Boyer for a return to work without restrictions on January 6, 2012, but did not mention Dr. Zimmermann's subsequent report, on January 16, that she had given Boyer a note stating that she could not bend, lift more than 10 pounds, or stand for prolonged periods for four months.  Dr. Fairley also described Dr. Brown's opinion:

> Dr. Brown MD 9-27-12 considered her capable of only parttime sedentary work.  He noted tenderness (L) 1stMCP, reduced ROM spine, normal gate, SLR, DTRs & Romberg.

Tr. 87, 99.  Finally, even though Dr. Brown deemed Boyer to have a more limited exertional capacity than Dr. Fairley did, Dr. Fairley answered "No" to the question: "Are there medical source and/or other source opinions about the individual's limitations or restrictions which are more restrictive than your findings?"  Tr. 88, 100.

On August 21, 2013, Dr. Silvia-Kalkan,[4] a general practitioner, and Joanne Pomeranz, an advanced practice registered nurse, signed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Boyer.  Dr. Silvia-Kalkan and Pomeranz both worked at the Harbor Care & Wellness

---

[4] This physician is referred to by various names in the ALJ's decision and the parties' filings (Dr. Siromich-Kalksee, Dr. Sylvia Sironich-Kalkan, and Dr. Sironich).  The court adopts the name used in the Joint Statement of Material Facts.

8

Center, where Boyer had treated for several years prior to August of 2013.  They opined that Boyer could: (1) occasionally lift and/or carry less than 10 pounds; (2) frequently lift no amount of weight; (3) stand and/or walk (with normal breaks) for less than two hours in an eight-hour workday; (4) sit for less than six hours in an eight-hour workday; and (5) never climb.  They also opined that Boyer was "limited to jobs where [she] is allowed to take unscheduled breaks to relieve pain or discomfort," id. at 833, and that her "condition(s) [would] likely cause [her] to be absent from work three or more times per month."  Id.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following medically determinable impairments: status post fall down embankment, arthritis, Hepatitis C, vertigo, chest pain, diverticulitis, anxiety, depression, and substance abuse. (20 CFR 404.1521 et seq. and 416.921 et seq.).
>
> 4.  The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq. and 416.921 et seq.).
>
> . . . .
>
> 5.  Alternatively, I proceed through the subsequent steps in the sequential evaluation with a finding that

>the claimant's alleged spine disorder and residuals status post fall are severe (20 CFR 404.1520(c) and 416.920(c)).
>
>. . . .
>
>6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
>. . . .
>
>7. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour day; engage in unlimited use of her hands and feet to operate controls, push, and pull; never climb ladders, ropes, or scaffold[s] but occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and should avoid all exposure to unprotected heights.
>
>. . . .
>
>12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 31-32, 40, 41, 43. Based upon his assessment of Boyer's residual functional capacity, and a hypothetical question posed to a vocational expert that incorporated the RFC recited above, the ALJ determined that Boyer was able to perform the jobs of housekeeper, merchandise marker, and vending machine attendant.

**III. Discussion**

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether Boyer was under a disability from November 15, 2011, through November 27, 2013.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Boyer's Claims

Boyer claims that the ALJ erred at step two by determining that she suffered from no severe impairments. As for the ALJ's alternative analysis, in which he assumes that Boyer's "alleged spine disorder and residuals status post fall are severe," Tr. 40, Boyer claims that the ALJ: (1) erred at step two by determining that she had no severe mental impairments; (2) improperly weighed the opinion evidence when determining her physical RFC; (3) failed to properly consider her mental

12

impairments when determining her RFC; and (4) failed to properly consider certain "other source" evidence when determining her RFC. In her motion to affirm her decision, the Acting Commissioner does not defend the ALJ's step-two determination that Boyer suffered from no severe impairments. Rather, she contends that the ALJ's alternative analysis is supported by substantial evidence. The court agrees with Boyer that the ALJ's mishandling of the medical opinion evidence regarding her physical RFC warrants a remand.

An ALJ must evaluate every medical opinion he receives. See 20 C.F.R. §§ 404.1527(c) & 416.927(c). As a general rule, but subject to exceptions, an ALJ should give the greatest weight to the opinion of a medical source who has treated the claimant, less weight to the opinion of a medical source who has only examined the claimant, and the least weight to the opinion of a medical source who has neither treated nor examined the claimant. See 20 C.F.R. §§ 404.1527(c)(1) & (2), 416:927(c)(1) & (2). Moreover, the ALJ is obligated to explain the weight he gives to each medical opinion he evaluates. See 20 C.F.R. §§ 404.1527(e)(2)(ii) & 416.927(e)(2)(ii).

The court begins by sorting out the opinions on Boyer's physical RFC. By the ALJ's count, there are five: (1) a January 6, 2012, opinion from Dr. Zimmermann; (2) an "August 2013 opinion of treating nurse Joanne Pomeranz," Tr. 36; (3) "the

13

opinion of a nurse practitioner, co-signed by a general practice doctor who appears to be listed as Dr. Siromich-Kalksee," Tr. 37;[5] (4) the opinion of Dr. Brown; and (5) the opinion of Dr. Fairley.  In his decision, the ALJ gave: (1) significant weight to Dr. Zimmermann's opinion; (2) little weight to the Pomeranz opinion;[6] (3) little weight to the opinion of the nurse practitioner;[7] and (4) some weight to Dr. Brown's opinion.  However, while the ALJ discusses Dr. Fairley's opinion, see Tr. 42, his decision does not appear to specify the weight he gave it.  There are several problems with the ALJ's evaluation of the opinion evidence in this case.

### 1. Dr. Zimmermann

The ALJ gave significant weight to Dr. Zimmermann's opinion that "the claimant could work without restriction."  Tr. 36 (emphasis added).  There is no substantial evidence that Dr. Zimmermann ever gave such an opinion.  On January 5, 2012, Dr.

---

[5] As best the court can tell, the Pomeranz opinion and the opinion of a nurse practitioner, both of which the ALJ refers to as Exhibit 16F, are actually only a single opinion, not two separate opinions.

[6] The ALJ said that he discounted this opinion because Pomeranz was not an acceptable medical source, her diagnoses were not supported by the evidence of record, and her RFC was not supported by her own objective observations.

[7] The ALJ said that he discounted this opinion because it was not clear who authored it, and it was not clear that Dr. Silvia-Kalkan ever examined or treated Boyer.

Zimmermann told her nurse, by e-mail, that Boyer "should be able to return to work at this time." Tr. 668. On January 6, that nurse told Boyer "that Dr. Zimmermann states she may return to work without restrictions." Tr. 667. Thus, what the ALJ calls Dr. Zimmermann's January 6 opinion is actually Dr. Zimmermann's nurse's interpretation of Dr. Zimmermann's January 5 opinion, an interpretation that adds something, "without restrictions," that does not appear in Dr. Zimmermann's January 5 e-mail.

However, even if Dr. Zimmermann gave the opinion that the ALJ says she did, and to which he gave significant weight, there is another problem. In his decision, the ALJ observed that during a telephone conversation with Dr. Zimmermann's nurse, Boyer requested an appointment with Dr. Zimmermann. He goes on to say: "There was no note of such follow-up appointment." Tr. 34. But the record does include a progress note written by Dr. Zimmermann after an encounter with Boyer on January 16, 2012.

During that office visit, Boyer complained of pain in her left knee, back, left hip, and groin. At the end of her progress note, Dr. Zimmermann reported that she gave Boyer "a note stating that she cannot do any bending or lifting [of] more than 10 pounds and no prolonged standing for the next 4 months." Tr. 666. So, even if Dr. Zimmermann had said that Boyer was capable of working without restrictions on January 5 or 6, any such opinion was plainly superseded on January 16. Yet, the

15

ALJ's decision says nothing about the January 16 progress note. By overlooking or ignoring that progress note, the ALJ failed to fulfill his responsibility to evaluate every opinion in the record. See 20 C.F.R. §§ 404.1527(c) & 416.927(c). It is for the ALJ to determine, on remand, the amount of weight to give Dr. Zimmermann's January 16 opinion, and how that opinion informs his determination of Boyer's RFC.

The Acting Commissioner argues that even if the ALJ erred by failing to evaluate the progress note, any such error was in Boyer's favor. That is because Dr. Zimmermann opined that Boyer's restrictions would last for only four months, while in the context of social security disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of less not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382(c)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). In the Acting Commissioner's view, Dr. Zimmermann's opinion predicting a four-month limitation on Boyer's ability to work supports the ALJ's finding that Boyer was not disabled rather than Boyer's argument that she was. Regardless of the validity of the Acting Commissioner's argument, "it is not for the Acting Commissioner

to make arguments in support of the ALJ's decision that the ALJ did not make." Gilbert v. Colvin, No. 14-cv-533-LM, 2015 WL 3755118, at *6 (D.N.H. June 16, 2015) (citing Gurney v. Soc. Sec. Admin. Comm'r, 880 F. Supp. 2d 174, 178 (D. Me. 2012)). Thus, the Acting Commissioner's attempt to reduce the ALJ's failure to evaluate the January 16 opinion to the status of harmless error is unavailing.

2. Dr. Fairley

The ALJ also erred in his evaluation of Dr. Fairley's opinion. As the court has noted, the ALJ never specifically indicated the weight he gave that opinion. However, as Dr. Fairly is the only medical expert to opine that Boyer had the capacity for lifting and carrying that is included in the ALJ's RFC, the court will presume that the ALJ gave great weight to Dr. Fairley's opinion. But, apart from saying why he did not give great weight to other opinions in the record, the ALJ never explained why he chose to give great weight to Dr. Fairley's opinion. That is a mistake, given that an "administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant . . . as the administrative law judge must do for any opinions from treating sources [and] nontreating sources." 20 C.F.R. §§ 404.1527(e)(2)(ii) & 416.927(e)(2)(ii).

17

For the benefit of the ALJ on remand, the court notes the following problems with Dr. Fairley's consideration of the opinions of both Dr. Brown and Dr. Zimmermann.  While Dr. Fairley says he gave great weight to Dr. Brown's opinion, he gave Boyer a less restrictive RFC than Dr. Brown had given her while stating that there were no medical source opinions that indicated limitations more restrictive than the ones he imposed. Dr. Fairley's failure to explain, or even acknowledge, the more restrictive exertional limitations in Dr. Brown's opinion would appear to undermine, at least to some extent, the supportability of his opinion.  See 20 C.F.R. §§ 404.1427(c)(3) & 416.927(c)(3).  Second, Dr. Fairley stated that "Dr. Zimmermann MD on 1-16-12 considered her capable of returning to work without restriction."  Tr. 87, 99.  While Dr. Fairley cited certain findings from the January 16, 2012, progress note, he does not acknowledge the opinion at the end of it, which includes several significant restrictions on Boyer's capacity for performing work-related activities.  Thus, Dr. Fairley's mistake(s) in considering Dr. Zimmermann's opinions would appear to be the source of the ALJ's mistakes on that score.

3. Dr. Brown

The ALJ's errors in considering the opinions of Drs. Zimmermann and Fairley warrant remand.  Accordingly, there is no

need to deal in detail with the ALJ's evaluation of the remaining opinions.  That said, the court harbors one concern over the manner in which the ALJ handled the opinion that resulted from Dr. Brown's consultative examination.

Specifically, it is difficult to see what substantial evidence supports the ALJ's observation that Dr. Brown's finding that Boyer could perform only part time work appeared "to be based upon the claimant's subjective statement of her functioning, rather than upon his own personal examination of the claimant."  Tr. 42.  Dr. Brown examined Boyer and watched her move around his examining room.  He also listened to what she had to say about her ability to perform activities of daily living.  Dr. Brown's discussion of functional issues focused on both specific activities, such as shopping, cooking, and cleaning, and on more generic exertional activities such as standing, siting, lifting, and carrying.  Given that Dr. Brown both examined Boyer and spoke with her, there does not appear to be substantial evidence to support the ALJ's determination that Dr. Brown based his opinion on what Boyer told him rather than on what he learned from his observations and examination.

### IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is denied, and

Boyer's motion to reverse that decision, document no. 9, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                      _____
                                      Landya McCafferty
                                      United States District Judge

January 15, 2016

cc:   Janine Gawryl, Esq.
      T. David Plourde, Esq.